# CHICAGO, BURLINGTON AND KANSAS CITY RAILROAD *v.* GUFFEY.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Submitted April 4, 1887. — Decided May 23, 1887.

It being now conceded that the taxes in suit refer not only to the branch referred to in the former opinion of the court in this case, reported in 120 U. S. 569–575, but to the taxes assessed upon that part of the main line which extends from Unionville in Putnam County to the boundary line between Missouri and Iowa, the court now decides, on an application for a rehearing:

(1) That it is satisfied with the construction which it has already given to the statute of the legislature of Missouri of March 21, 1868:

(2) That the statute of that legislature enacted March 24, 1870, as interpreted by the court, in its application to the main line, does not impair the obligation of any contract which the St. Joseph & Iowa Railroad Company had, by its charter, with the State of Missouri.

The statute of Missouri of March 24, 1870 (Art. 2, c. 37, § 57 Wagner's Statutes of Missouri, 1872) subjecting to taxation railroads acquired by a foreign corporation by lease, also applies to roads acquired by such corporations by purchase.

No question arises in this case under the provision in the charter of the

St. Joseph & Iowa Railroad Company which authorizes it to pledge its property and franchises to secure an indebtedness incurred in the construction of its road.

This was a petition for a rehearing of the case reported at 120 U. S. 569.

*Mr. L. T. Hatfield* and *Mr. A. W. Mullins* on behalf of the railway company signed and filed the petition, which was as follows:

Now at this day comes the plaintiff in error and presents this its petition, praying for a rehearing in this cause, and respectfully asks this court to reconsider its opinion; for the sole reason that the court has mistaken the facts in the case, and therefore the law declared is inapplicable.

In the beginning of its opinion this court states:

"The judgment which this wiit of error brings up for review affirms the liability to taxation, in Missouri, for state and county purposes, of what was formerly known as the Central North Missouri Branch of the St. Joseph and Iowa Railroad, more recently named the Linneus Branch of the Burlington and Southwestern Railway Company, and now owned by the Chicago, Burlington and Kansas City Railroad Company, a corporation organized under the laws of Missouri."

That is a mistake. By following the reference here given to the printed record, a self-correcting medium will be found.

[Here follow sundry references to the record by pages and figures, which are unintelligible without the record.]

It will thus be seen that the greater part of the line in controversy in this cause is *main line.* It will be observed that the action was brought, defended and considered by the trial court, as one piece of property. At no place in the record can there be found any objection whatever to the legality of the organization of the St. Joseph and Iowa Railroad Company, the projection of the branch line, or the construction of all of it, except as evidenced by the fruitless effort to show a prior *location* by another company, of a line running through the country traversed by the branch line. See pp. 99–115,

and as stated, counsel for the state waived the technical objections he had made.

By giving defendant's instruction, number one, p. 115, the trial court recognized the line as an entirety, equally entitled to the immunity, provided such immunity could be conveyed at all. By refusing instruction number two, pp. 115, 116, that court declared the law to be so that the immunity did not pass under the deed of May 23, 1871, pp. 32–36, or in any other manner. It was upon that ground that the case was appealed to the Supreme Court of Missouri. The theory upon which the cause was tried was based upon the law laid down by the Supreme Court of Missouri in *State ex rel. St. Joseph & Iowa Railroad* v. *Sullivan County*, 51 Missouri, 522; *Cooper* v. *Sullivan County*, 65 Missouri, 542; *Scotland County* v. *Missouri, Iowa & Nebraska Railroad*, 65 Missouri, 123, 135; *Daniels* v. *St. Louis, Kansas City & Northern Railroad*, 62 Missouri, 43; *Atlantic & Pacific Railroad* v. *St. Louis*, 66 Missouri, 228; which was then considered the established rule of property in this case. In *State ex rel. St. Joseph & Iowa Railroad*, and *Cooper* v. *Sullivan County*, *supra*, the power of direct taxation was invoked and enforced by the Supreme Court of Missouri, in an amount exceeding principal and interest, half a million dollars in support of this same branch line whose only right to exist and have those powers is contained in the charter of the St. Joseph and Iowa Railroad Company. It was not then nor is it now believed by counsel for plaintiff in error, that the power to cause the levy and collection of a direct tax from the people, as was done in those cases, should be considered of any less force and importance than a provision that merely withholds money the people never did have, and which they could not possibly have had without the construction of the road.

There was no point made by counsel for the state or county, either in the trial or Supreme Court of Missouri, as to separate existence of the branch line, and it was only when the opinion of that court was announced that the views there enunciated were ever heard of. There never was any separate organization or management, no divorce.

The Supreme Court of Missouri, in its opinion, however, in subdivision II, pp. 123–5, takes up the question of the effect of the sale of the St. Joseph and Iowa Railroad, to the Burlington and Southwestern Railway Company, see deed, pp. 32–36, and there announced the doctrine that this plaintiff in error especially complains of. See assignment of errors, brief, pp. 25, 26; and which caused the suing out of the writ of error in this behalf.

The discussion of the branch line question in the brief filed here by plaintiff in error, pp. 31–40, was merely incidental to the main question and drawn out by the opinion of the Supreme Court of Missouri. But the material question was the views of the Supreme Court of Missouri, in said subdivision II, printed record, pp. 123–5, *supra*, and is presented we think very forcibly in the brief of plaintiff in error, pp. 40–51, inclusive.

If the construction of § 2 of the act of March, 1870 (Session acts of Missouri, 1870, p. 90), by the Supreme Court of Missouri is correct, then our whole structure falls of its own weight, and our claims are groundless. Upon the other hand, if the construction of said section by that court is erroneous, then the judgment should be reversed and the cause remanded regardless of the branch line question, as it is impossible to fix the proper division of the property, if division be necessary, in the present state of the record, and its condition does not appear to be the fault of either of the parties as they tried it in the light that was then before them.

The opinion of this court clearly holds that the main line and all branches built solely under the provisions of the charter of the St. Joseph and Iowa Railroad Company, shall be exempt in the hands of the present owner. The record here shows that there is both main line and branch line in this particular case, and as it is a fact that more than two-thirds of it is main line, it is considered good ground for asking a rehearing and reconsideration of your opinion. There are five other counties interested and in four of them suits are now pending. Therefore a full discussion and determination of the true tenor and effect of the act of March 24, 1870, *supra*, by

this court will practically determine all the matters in controversy; in fact there are agreements in two counties to abide the decision of this court upon the construction put upon that section by the Supreme Court of Missouri. A failure therefore, to consider that matter will not only do great and irreparable injury to the plaintiff in error by requiring it to pay that for which it is not liable, but make it necessary to bring other causes here to obtain the decision of such question.

It must be that this court was misled as to the facts in the case, by the language of the Supreme Court of Missouri, in the last two lines of the statement of the case near the bottom of p. 122, printed record, thus:

"The taxes in suit were assessed upon this branch road property."

The record shows a different state of facts. Those words must have been a fragment of some memorandum from some part of the case having reference to the branch line.

Your petitioner also desires to call attention to the language of this court, at the beginning of the last paragraph on p. 2 of your opinion.

"As perhaps every railroad company, organized under the laws of the state prior to the adoption of the constitution of 1865, had general authority to construct branch roads," etc.

This matter is discussed at p. 34, brief of plaintiff in error. Few companies had general power to build branches; in most cases the charter contained the points of intersection with the main line and the names of the principal points on the proposed branch. Certainly unless the general direction of a line were given and at least one terminal point fixed, it would have been impracticable to have exercised the right of eminent domain or made any record authorized by any known law touching the existence of a previously undescribed branch line.

It was this defect that was sought to be eliminated by the act of March 21, 1868, in the nature of a general amendment to the charter of

"Any railroad company in this state authorized by law to build branches,"

And was fully sustained in the cases against Sullivan County, supra, and such legislation is fully sustained by the cases cited, pp. 29, 30, brief of plaintiff in error.

Prior to the adoption of the constitution of Missouri of 1875, a corporation could have been organized with millions of dollars capital at an expense of not more than five dollars; assuredly the resolution to build the branch line, including authentication, cost as much as that. If it brought such corporations under the provisions of the general statutes governing railroads it was a work of supererogation.

It was the resolution of the Board of Directors of the main line, *their will* that gave life to the branch line, all the power was in the parent company, no new stock is provided for; the law contained in the charter governs, or the Branch Aid Act of March 21, 1868, is a nullity. It cannot be taken up piece-meal.

Upon no theory would persons be permitted to vote for directors and officers of a corporation other than that they were stockholders in such corporation.

It would be competent and proper to construct the main line in divisions, making contracts and fixing the liabilities of each separately, and in that way secure stock subscriptions and other aid that could not be obtained in any other way, and it would be a matter of no concern to any one but those directly interested. The state offered inducements to secure a railroad and that is all it expected or could wish.

Wherefore and for the reasons given the plaintiff in error asks this court to grant it a rehearing in this cause, or that the opinion be reconsidered, to the end that full and final justice be done in the premises. Hereby giving present assent to such terms as the court may prescribe with reference to the cost to this time.

*Mr. B. G. Boone*, Attorney General of Missouri, and *Mr. S. P. Huston*, on behalf of the defendant in error, applied for leave to file a brief on the petition for a rehearing, which was granted on the 11th April, 1877. They thereupon filed the following brief in reply.

I.  The statement made in the petition for a rehearing herein, that the question as to the separate existence of the branch line was not made in the trial court or Supreme Court of the State of Missouri, is, to characterize it mildly, the grossest error.  It was made all along the line in all the courts, and in proof thereof, defendant in error files herewith a copy of his brief in this case, as filed in the Supreme Court of Missouri, and refers to subdivision II, commencing on p. 7.  The petitioner is also in equal error when he says that suits are pending in other counties to abide the construction by this court of the act of 24th of March, 1870.  Cases are pending in such courts, and are to abide the *result* in this court, but as the road taxed in those counties is *all branch line*, the decision of this case on the point made is equally decisive.  Again, he is in error when he states that "the greater part of the line in controversy" is *main line*, built by the St. Joseph and Iowa.  The St. Joseph and Iowa company never built a *foot* of road, *main* or *branch*.  After it sold out to the Burlington and Southwestern, *that* company built into the state of Missouri to Unionville, a distance of seven miles, and there formed a connection with this branch.  It was all built by the Burlington and Southwestern, and this spur from Unionville to the state line was called main line by that company to distinguish it from the branch line which commenced at Unionville and ran south through a large part of the state.  There has never been anywhere in the state any main line constructed other than this seven miles, and it was not constructed by the St. Joseph and Iowa, but by the Burlington and Southwestern.  Again, if this company claims that a few miles of road which has been assessed as an entirety with other roads not exempt, is exempt from taxation, how can the courts apportion the assessment?  This would be virtually to reassess the property.  They should apply to the state board for the assessment of railroads, and have it either omitted, or, if assessed, assessed separately, or at least the burden is on them in a suit for taxes to make clear the value of the portion exempt.  There is not a scintilla of testimony on this subject offered by plaintiff in error, but it asks the court to

presume equal value per mile, without regard to station houses; turn-outs, &c. There is nothing on the entire record by which the trial court could determine what part of the tax levied on any particular mile or road, is levied on it as an entirety, and if plaintiff in error claimed any of it was levied on a part of the entirety claimed to be exempt, it should have made it plain, so that the court could have severed it. No declaration of law to this effect was asked, no claim of this character made till after the decision or the case in *this court*, when, for the *first* time, plaintiff in error invokes this claim, in order to procure a rehearing of this case.

II. But should this court conclude that the point decided does not cover the little spur from the state line to Unionville, facetiously called "main line," the defendant in error insists that the Burlington and Southwestern Company in availing itself of the act of March 24, 1870, to purchase a railroad created by the legislature of Missouri, agreed to and did renounce all claim to an immunity from taxation. *Paul* v. *Virginia*, 8 Wall. 168; *Ducat* v. *Chicago*, 10 Wall. 410; *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Cooper M'f'g Co.* v. *Ferguson*, 113 U. S. 727.

III. The St. Joseph and Iowa could only sell or mortgage an immunity from taxation when clearly authorized by the legislature. In the charter the only authority was to mortgage the "property and franchise." This did not include *immunity* from taxation. *Morgan* v. *Louisiana*, 93 U. S. 217, 223; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244; *Memphis Railroad* v. *Commissioner*, 112 U. S. 609; *Memphis & Little Rock Railroad* v. *Berry*, 41 Ark. 436; *State* v. *Sherman*, 22 Ohio St. 411.

If there was no legislative authority to mortgage the *immunity*, then the mortgage made by the Burlington and Southwestern Company, on the entire line, did not pass the *immunity*, and the foreclosure of the mortgage could not pass it. Then Elijah Smith did not succeed to the immunity by virtue of the master's deeds under foreclosure. See authorities cited in former brief.

IV. The St. Joseph and Iowa Company could not purchase and thus destroy the property and franchise of the N. M. Central Company, which was subject to taxation and the first to occupy the ground and then elect to construct a road under a charter with exemptions. See authorities in former brief in this case by defendant in error.

V. After the adoption of the constitution of 1865, the legislature could not authorize a *sale* of this exemption. That would be equivalent to creating a new corporation with an exemption then prohibited by law. It would be an evasion of the spirit and intention of the organic law. See cases cited in original brief, filed in this case under subdivision IV.

MR. JUSTICE HARLAN delivered the opinion of the court.

The opinion heretofore delivered in this case is reported in 120 U. S. 569. We are now asked by the plaintiff in error to grant a rehearing; chiefly, upon the ground that this court assumed that the only question necessary to be determined was as to "the liability to taxation, in Missouri, for state and county purposes, of what was formerly known as the Central North Missouri Branch of the St. Joseph and Iowa Railroad, more recently named the Linneus Branch of the Burlington and Southwestern Railway Company, and now owned by the Chicago, Burlington and Kansas City Railroad Company, a corporation organized under the laws of Missouri." The property, upon which the assessment in question was made, is described in the pleadings in such general terms that it is impossible to ascertain how much of it belongs to what is called the Linneus Branch, and how much to what is described in the petition for rehearing as the "main line" of the company.

The Supreme Court of Missouri, as appears from its opinion in the record, after referring to the purchase made in 1871 by the Burlington and Southwestern Railway Company, an Iowa corporation, of the main line and the property, rights, privileges, and franchises of the St. Joseph and Iowa Railroad

Company, said: "Afterwards, and in 1872, the directors of the Burlington Company, acting by the direction of the stockholders of the branch road, then called the Linneus Branch, placed upon the branch road a mortgage to secure certain bonds. The main line had been previously mortgaged. The defendant purchased the branch road through a foreclosure sale had upon the mortgage thereon. The taxes in suit were assessed upon this branch road property." Again: "If, as we have seen, the Burlington Company does not acquire the immunity from taxation, it is difficult to see how any branch built by it could take on the exemption."

Assuming, from the language of the court below, that the only taxes *in suit* were those assessed upon the branch road property, we restricted our decision to the single question as to the liability to taxation of branch roads established under the act of March 21, 1868, entitled "an act to aid in the building of branch roads in the State of Missouri;" holding, that roads constructed under that statute came, so far as taxation was concerned, under the operation of the clause of the Missouri Constitution of 1865 which declares that "no property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to the state, to counties, or to municipal corporations."

It is now claimed — and we understand the attorney general of Missouri, in effect, to concede — that the taxes in question were in fact laid, not only upon the Linneus Branch lying in Putnam County, but upon that part of the defendant's "main line" which extends from Unionville, in the same county, to the boundary line between Missouri and Iowa. We are, therefore, asked to determine whether or not the last described part of the defendant's road is not exempt from taxation for state and county purposes. To this request we yield, not only because it is now, in effect, conceded that that question is covered by the pleadings, but because of the suggestion that other cases are pending in the courts of the state which, by stipulation of the parties, are to abide the determination of the one now before us.

This claim of immunity from taxation, in respect to the road between Unionville and the Iowa line, is upon these grounds: 1. That, by the charter of the St. Joseph and Iowa Railroad Company, granted in 1857, it is provided that "the stock of said company shall be exempt from all state and county taxes;"[1] 2. That such exemption, in law, extends to the property of that corporation, as represented by its stock; 3. That the defendant, a corporation of Missouri, and the successor of the Burlington and Southwestern Railway Company, is entitled to the benefit of the exemption granted to the St. Joseph and Iowa Railroad Company by its charter of 1857.

Conceding, for this case, that the exemption from taxation of the stock of the St. Joseph and Iowa Railroad Company necessarily embraced the property of the corporation, the question still remains, whether that immunity passed to the Burlington and Southwestern Railway Company by its purchase in 1871. The determination of that question depends upon the construction and effect to be given to the second section of an act of the General Assembly of Missouri approved March 24, 1870. That section became § 57 of Art. 2, c. 37, of Wagner's Statutes of Missouri of 1872, and is as follows:

"Any railroad company heretofore incorporated or hereafter organized in pursuance of law, may, at any time, by means of subscription to the capital stock of any other railroad company, or otherwise, aid such company in the construction of its railroad, within or without the state, for the purpose of forming a connection of the last-mentioned road with the road owned by the company furnishing such aid; or any such railroad company, which may have built its road to the boundary line of the state, may extend into the adjoining state, and for that purpose may build, or buy, or lease a rail-

---

[1] Act of January 22, 1857, incorporating the St. Joseph and Iowa Railroad Co., Missouri Sess. Laws, 1856–57, p. 107, § 3; Act of February 16, 1847, incorporating the Hannibal and St. Joseph Railroad Co., Missouri Acts of 1847, p. 156; Act of 1837, incorporating the Louisiana and Columbia Railroad, Missouri Acts of 1837, p. 240, § 24; *State, ex rel. St. Joseph and Iowa Railroad* v. *Sullivan County,* 51 Missouri, 522; *Cooper* v. *Sullivan County,* 65 Missouri, 542.

road in such adjoining state and operate the same, and may own such real estate and other property in such adjoining state as may be convenient in operating such road; or any railroad company organized in pursuance of the laws of this or any other state, or of the United States, may lease or purchase all or any part of a railroad, with all its privileges, rights, franchises, real estate, and other property, the whole or a part of which is in this state, and constructed, owned, or leased by any other company, if the lines of the said road or roads of said companies are continuous or connected at a point either within or without this state, upon such terms as may be agreed upon between said companies respectively; or any railroad company, duly incorporated and existing under the laws of an adjoining state, or of the United States, may extend, construct, maintain, and operate its railroad into and through this state, and for that purpose shall possess and exercise all the rights, powers, and privileges conferred by the general laws of this state upon railroad corporations organized thereunder, and shall be subject to all the duties, liabilities, and provisions of the laws of this state concerning railroad corporations as fully as if incorporated in this state: *Provided*, that no such aid shall be furnished, nor any purchase, lease, sub-letting, or arrangements perfected, until a meeting of the stockholders of said company or companies of this state, party or parties to such agreement, whereby a railroad in this state may be aided, purchased, leased, sub-let, or affected by such arrangement, shall have been called by the directors thereof, at such time and place, and in such manner, as they shall designate, and the holders of a majority of the stock of such company, in person or by proxy, shall have assented thereto, or until the holders of a majority of the stock of such company shall have assented thereto in writing, and a certificate thereof, signed by the president and secretary of said company or companies, shall have been filed in the office of the Secretary of State: *And provided, further*, That if a railroad company of another state shall lease a railroad, the whole or a part of which is in this state, or make arrangements for operating the same as provided in this act,

or shall extend its railroad into this state, or through this state, such part of said railroad as is within this state shall be subject to taxation, and shall be subject to all regulations and provisions of law governing railroads in this state, and a corporation in this state leasing its road to a corporation of another state shall remain liable as if it operated the road itself, and a corporation of another state, being a lessee of a railroad in this state, shall likewise be held liable for the violation of any of the laws of this state, and may sue and be sued, in all cases and for the same causes, and in the same manner as a corporation of this state might sue or be sued if operating its own road; but a satisfaction of any claim or judgment by either of said corporations shall discharge the other; and a corporation of another state, being the lessee as aforesaid, or extending its railroad as aforesaid, into or through this state, shall establish and maintain an office or offices in this state, at some point or points on the line of the road so leased or constructed and operated, at which legal process and notice may be served as upon railroad corporations of this state."

As the proposed lines of the Burlington and Southwestern Railway Company and the St. Joseph and Iowa Railroad Company would, when constructed, make a connected or continuous line from Burlington, Iowa, to St. Joseph, Missouri, the authority of the former corporation, under the act of 1870, to purchase or lease the road of the latter, cannot be doubted.

But, as we have seen, the act expressly declares that if a railroad corporation of another state leases a railroad, the whole or part of which is in Missouri, or makes arrangements for operating the same as provided in that act, such part of that railroad, as is within the latter state, "shall be subject to taxation." Great stress is laid by counsel on the fact that, while the act authorizes a foreign corporation to "lease *or* purchase" a railroad, the whole or part of which is in Missouri, the word "purchase" is not used in the proviso relating to taxation. It is therefore argued that, while the legislature intended to subject to taxation railroads in Missouri which were *leased,* after the passage of the act of 1870, to corporations of other states, it did not intend to tax railroads, in that

state, which were *purchased* outright by corporations of other states. That construction of the act is inadmissible. If supported by the mere letter of the statute, it is inconsistent with the manifest object which the legislature had in view, namely, to subject to taxation railroad property in Missouri which passes under the control of a corporation of another state, whether by purchase or by lease, or by "arrangements for operating the same, as provided" in the act of 1870. The state had the right to prescribe, as a condition upon which the road, property, franchises, and privileges of the St. Joseph and Iowa Railroad Company might be placed, by any of those modes, under the control of a railroad corporation of another state, that such property, after being so transferred, should be subject to taxation. Whether such a condition could be imposed upon a corporation having the right, by its charter, before the act of 1870, to make an absolute sale of its road, privileges, and franchises, and to pass to the purchaser whatever immunities from taxation it then enjoyed, we do not decide. No such question is now presented.

It is, however, claimed — such we think is the effect of the argument in behalf of the company — that the St. Joseph and Iowa Railroad Company, for the purpose of enabling it "to construct, equip, and operate said road," had the power, by its charter, as amended November 5, 1857, "to pledge the said road, rolling stock, machinery, depots, and any other property they may possess, together with the franchises of said road, for the liquidation of any indebtedness said railroad company may incur in the construction of said road." Missouri, Stats. 1857, 73, § 3, p. 74, This power to pledge, it may be insisted, could not legally be affected or modified by the act of 1870, although that act took effect before any mortgage was put upon the main line. In answer to such suggestions, it is sufficient to say that the restricted power of the company thus to pledge its property and franchises for the liquidation of indebtedness incurred in the construction of its road, did not authorize it to make, in the first instance, an absolute sale of its property, rights, privileges, and franchises, to a corporation of another state. The power to make the absolute deed

of 1871 to the Burlington and Southwestern Railway Company was given by the act of 1870, and does not appear to have existed before that time. In no view of the case, therefore, were the conditions prescribed by that act in violation of any right possessed by the St. Joseph and Iowa Railroad Company under its charter. If that corporation elected to make an absolute sale of its road, with its property, rights, privileges, and franchises, under the authority given by the act of 1870, they passed to its grantee, subject to the condition that its road, in Missouri, so sold, should thereafter be subject to taxation.

Without pursuing the subject further, we are satisfied with the construction we have heretofore given to the act of 1868. And we are, also, of opinion that the act of 1870, as in this opinion interpreted, does not impair the obligation of any contract, which the St. Joseph and Iowa Railroad Company had, by its charter, with the state of Missouri.

*The rehearing is denied, and the judgment of affirmance, heretofore entered, must, upon the grounds stated in this and the original opinion, stand as the judgment of this court.*