SPRINGS v. SOUTHERN RAILWAY COMPANY.

(Filed April 15, 1902.)

1. REMOVAL OF CAUSES—*Dismissal.*

A state court can not dismiss an action on granting a petition for removal to a federal court, but can merely stay proceedings pending a determination by the federal court of the question of jurisdiction.

2. REMOVAL OF CAUSES—*Petition—Diverse Citizenship.*

A petition by a corporation for the removal of a cause from a state to a federal court must specifically allege that the petitioner is a corporation created under the laws of another state and is not a domestic corporation.

3. REMOVAL OF CAUSES—*Petition—Amendment—Jurisdiction.*

A fatal defect in the allegation of diverse citizenship in a petition for the removal of a cause from a state to a federal court, for that reason, can not be corrected by amendment in the federal court.

4. EVIDENCE—*Railroads—Personal Injuries.*

It is competent in an action for personal injuries for plaintiff to show that he had complained of the engine on which he was injured and had been promised a safer one.

5. EVIDENCE—*Railroads—Personal Injuries.*

In an action by a switchman for personal injuries, evidence that the engineer had a book of rules did not tend to prove that the switchman had any knowledge of such rules.

6. EVIDENCE—*Sufficiency.*

Under the evidence in this case the trial court properly refused to give instructions, which practically amounted to a direction of a verdict in favor of the defendant.

ACTION by Henry Springs against the Southern Railway Company, heard by Judge *W. S. O'B. Robinson* and a jury,

at March Term, 1901, of the Superior Court of MECKLEN-
BURG County.

This is an action for personal injury. The plaintiff, who
was employed by the defendant as a switchman, had been
working with a regular switch-engine, supplied with foot-
boards on each end, upon which he stood when the engine was
in motion. About March 1, this engine being out of order,
was sent to the shop for repairs, and the defendant used road
engines instead for the purpose of switching its cars. About
April 1 the plaintiff was ordered by one Warren Bull, who
had the right to employ and discharge him, to ride on the
pilots or cow-catchers of these road-engines while they were
switching. He had before that time been riding on the
gang-way behind the engineer, and sometimes behind the fire-
man, where he was comparatively safe. After receiving the
order from Warren Bull, he continued to ride on the pilot of
the engine for about ten days, until he was hurt.

There was evidence to the effect that the pilot was not as
safe a place to ride as the foot-board of the shifting engine.
Switchmen had been in the habit of jumping from the engine
while in motion, in order to do their work more rapidly, and
no objection to this course had ever been made by the officers
or agents of the defendant who saw it done. In fact, there
was evidence tending to show that it was sometimes necessary
to do so in order to get the work done in time. On the 10th
day of April, 1899, the plaintiff, in the performance of his
duties, attempted to jump from the pilot, as he had been in
the habit of doing without objection, when his foot was
caught between the ribs or slats of the pilot, and he was
thrown to the ground. The engine ran over his legs and
crushed them so severely that they had to be amputated. The
plaintiff testified that the engine was moving slowly when he
attempted to get off, and that he would have alighted safely
if his foot had not caught between the slats.

The defendant attempted to have this cause removed into the Circuit Court of the United States, and caused a transcript of the record to be docketed in that Court. It then moved in the Court below to *dismiss the action,* but the Court decided that the cause had not been properly removed, and proceeded with the trial. The jury found all the issues in favor of the plaintiff.

The defendant's assignments of error are as follows:

"1. The refusal of the Court to dismiss the action because the same had been removed to the Federal Court, which is the subject of defendant's first exception.

"2. The admission of the testimony of plaintiff as set out in defendant's second and third exceptions.

"3. The refusal of the Court to admit the testimony of Hillhouse, which is the subject of defendant's fourth exception.

"4. The instruction numbered 3, prayed for by the plaintiff, given to the jury, which is the subject of the defendant's fifth exception.

"5. The instruction numbered 5, prayed for by plaintiff, given to the jury, which is the subject of defendant's sixth exception.

"6. The refusal of the Court to give the instructions prayed for by defendant, subject to defendant's exceptions 6, 7, 8, 9, 10, 11, 12 and 13.

"7. The refusal of the Court to grant a new trial, which is the subject of the defendant's fourteenth exception."

Among other instructions, the Court gave the following at the request of the defendant:

"1. That the plaintiff must show by preponderance of evidence that he was injured by the negligence of the defendant, as alleged in the complaint, before the jury can find the first issue in his favor. The burden is upon the plaintiff to show this.

"2. That the plaintiff, in entering into the service of the defendant as a switchman, assumed the risk incident to the employment, and before he undertook to use the engine furnished him, it was his duty to inform himself as to its fitness for the use to which it was put, and also as to its safety.

"3. That the defendant owed to the plaintiff the duty of furnishing him with a suitable engine for the work he expected to perform, or one reasonably well adapted to the service to which it was to be applied, without exposing the plaintiff to peril not ordinarily incident to such service, but the defendant was not a guarantor of the safety of the plaintiff.

"4. The plaintiff's duties correspond with those of the defendant. He was bound to a reasonable care and diligence in the discharge of his duties as a switchman, and to look to his own safety.

"12. If the jury find from the evidence that there were steps on the pilot, about four inches wide and twenty inches long, on which plaintiff could have ridden in safety and stepped from without danger, and they should further find that without looking to see whether or not engine No. 24 was equipped with these steps, he assumed, voluntarily, a more dangerous position, to-wit, the position described, on top of the pilot, and this was the cause of the injury, the answer to the first issue should be 'No,' and to the second issue 'Yes.'

"13. It was the duty of the plaintiff to examine and acquaint himself with the engine supplied to him by the defendant, and if the jury find from the evidence that he failed to do this, and that such failure was the proximate cause of the injury, the answer to the first issue should be 'No,' and the second issue 'Yes.' "

The following instructions, numbered 3 and 5, were given at the request of the plaintiff, and were excepted to by the defendant:

"3. If the jury find from the evidence that the plaintiff

was employed by the defendant as a switchman, and as one of the crew that worked with one of its engines at Greenville, S. C., and they further find that the plaintiff was subject to the control and authority of Warren Bull, the conductor of that engine and captain of the crew, and that plaintiff was required to obey his orders, and was liable to be discharged for not doing so, and that Warren Bull ordered him to use the road engine while the switch engine was being repaired, and to ride on the leading end of the engine, or that end nearest the direction in which the engine was going, and they further find that Warren Bull represented to the plaintiff that the switch engine would soon be returned to the road, and that plaintiff, in obedience to the said orders and instructions, and believing that he would be discharged if he did not obey them, and relying upon said representation that the switch engine would soon be returned to the road, the plaintiff did ride on the front end of the pilot of said road engine, and, in doing so, he acted as a man of ordinary prudence would have done under the same circumstances, and also exercised ordinary care and prudence for his own safety while engaged in performing the service under said orders and instructions (ordinary care being the care which an ordinarily prudent man would have exercised under the same circumstances), the jury will answer the second issue 'No, as, under such facts and circumstances, the law will not impute negligence to the plaintiff as the proximate cause of injury, but will rather refer the injury to the negligence of the defendant as its proximate cause.

"5. That the plaintiff was not bound to observe the printed rules of the company unless they were brought to his attention, or in some way he had knowledge of their contents."

The part of the petition for removal which alleges the diverse citizenship is in the following words: "Your petitioner further states that in the above-mentioned civil action there is

a controversy which is wholly between citizens of different States, and which can be fully determined as between them, to-wit, a controversy between your said petitioner, which was, at the commencement of this action, and still is, a citizen of the State of Virginia, and the said Henry Springs, who, your petitioner avers, was at the commencement of this action, and still is, a citizen of the State of North Carolina, and of the Western District thereof, and that both the said Henry Springs and your petitioner are actually interested in said controversy."

After the trial of this action in the Superior Court and the rendition of judgment therein, the following words were inserted in the petition under an order of amendment made in the Circuit Court of the United States, to-wit: "That petitioner is a non-resident of the State of North Carolina, and is a corporation created under the laws of the State of Virginia." This averment does not appear in the pleadings. From a judgment for the plaintiff, the defendant appealed.

*Burwell, Walker & Cansler,* and *Jas. A. Bell,* for the plaintiff.
*Geo. F. Bason,* for the defendant.

Douglas, J., after stating the facts. The Court below properly refused the motion of the defendant to dismiss this action on account of its attempted removal into the Circuit Court of the United States. In no event could the Court below have *dismissed* the action, even if it had been properly removed. In the latter event it could only have stayed further proceedings, leaving the case upon the docket to await future developments. Even if the State Courts, Superior and Supreme, were to recognize the removal of an action, that would not necessarily end the question, as the right of removal is in its ultimate determination essentially a Federal

question. The Circuit Court has the power to remand any case if, in its opinion, it is improperly removed; and such a disclaimer of jurisdiction would at once revest the State Courts with all their original jurisdiction, or rather it would conclusively show that it had not been divested. We use the term "improperly" removed merely for convenience as indicating those cases where the petition to remove is improperly allowed. The removal takes place, if at all, by operation of law eo instanti upon a compliance with the Federal statutes.

Aside from the impropriety of this motion to dismiss, the petition for removal as presented to the Court below was fatally defective, inasmuch as its only allegation of non-residence was that the defendant was "a citizen of the State of Virginia." It failed to allege that the defendant was a corporation created under the laws of the State of Virginia, and that it was a non-resident of the State of North Carolina. The necessity for the allegation that the defendant was a non-resident of this State has been fully discussed and determined in Thompson v. Ry. Co., 130 N. C., at this term. That of itself would settle this case; but as we are anxious to aid as far as we can in the final determination of all questions relating to the removal of causes, we will proceed to consider this question as to the jurisdictional necessity for the allegation in the petition that the defendant is a corporation existing under the laws of another State.

That such an allegation is necessary, is clearly settled by the Federal decisions on this subject. In Insurance Co. v. French, 18 Howard, 404, 405, the Court says: "This is a writ of error to the Circuit Court of the United States for the District of Indiana. * * * In the declaration the plaintiffs are averred to be citizens of Ohio, and they 'complain of the LaFayette Insurance Company, a citizen of the State of Indiana.' This averment is not sufficient to show jurisdiction. It does not appear from it that the LaFayette

Insurance Company is a corporation; or, if it be such, by the law of what State it was created. The averment that the company is a citizen of the State of Indiana can have no sensible meaning attached to it. This Court does not hold that either a voluntary association of persons, or an associa-- tion into a body politic, created by law, is a citizen of a State within the meaning of the Constitution. And, therefore, if the defective averment in the declaration had not been other- wise supplied (by the pleadings), the suit must have been dismissed."

In *Muller v. Dows,* 94 U. S., 444, 445, the Court says: "The decree made below is assailed here for several reasons. The first is that the Court had no jurisdiction of the suit in consequence of the want of proper and necessary citizenship of the parties. This objection was not taken in the Circuit Court, but it is of such a nature that, if well founded, it must be regarded as fatal to the decree.    *    *    *    The two origi- nal defendants, the Chicago and Southwestern Railway Com- pany and the Chicago, Rock Island and Pacific Railway Com- pany, are averred to be citizens of the State of Iowa. Were this all that the pleadings exhibit of the citizenship of the parties, it would not be enough to give the Circuit Court jurisdiction of the case." The Court here quotes from *In- surance Co. v. French, supra,* and continues as follows: "A corporation of itself can be a citizen of no State in the sense in which the word 'citizen' is used in the Constitution of the United States. A suit may be brought in the Federal Courts by or against a corporation, but in such a case it is regarded as a suit brought by or against the stockholders of the corpora- tion; and, for the purposes of jurisdiction, it is conclusively presumed that all the stockholders are citizens of the State which, by its laws, created the corporation. It is therefore necessary that it be made to appear that the artificial being

was brought into existence by the law of some State other than that of which the adverse party is a citizen."

In *Pennsylvania v. Quicksilver Co.,* 10 Wall., 553, 556, the Court says: "And the question in this case is whether it is sufficiently disclosed in the declaration that the suit is brought against a citizen of California. And this turns upon another question, and that is whether the averment there imports that the defendant is a corporation created by the laws of that State; for, unless it is, it does not partake of the character of a citizen within the meaning of the cases on this subject. The Court is of opinion that this averment is insufficient to establish that the defendant is a California corporation. It may mean that the defendant is a corporation doing business in that State by its agent; but not that it has been incorporated by the laws of the State. It would have been very easy to have made the fact clear by averment, and, being a jurisdictional fact, it should not have been left in doubt."

After a careful examination, we fail to find any case in which the above cases have been overruled, modified or doubted. In the case of *Covington Drawbridge Co. v. Shepherd,* 20 How., 227, the Court, after drawing the somewhat acute distinction between the allegations that "a corporation *is* a citizen" and "a corporation are citizens" of a State, expressly reaffirms *Insurance Co. v. French.*

In *Frisbie v. Railway Co.,* 57 Fed. Rep., 1, where the petition alleged (in words almost exactly similar to the case at bar) that the petitioner "was at the time of the bringing of this suit and still is a citizen of the State of Virginia," the Court said: "An averment that a corporation is a citizen of a particular State is insufficient. A corporation is not a citizen of a State within the meaning of the Constitution. The averment should be that it was a corporation created by the laws of a particular State."

In *Lonergan v. Railroad,* 55 Fed. Rep., 550, it was held that (quoting the syllabus) "in showing diverse citizenship for the purpose of sustaining Federal jurisdiction, it is not sufficient to merely allege that a corporation is a citizen of a given State, for corporations are not strictly citizens. The averment must be to the effect that the corporation was created under the laws of the State named."

In view of the uniform trend of Federal decisions, it is useless to cite text-books upon a Federal question.

The absolute necessity for an averment that the petitioner is a corporation created under the laws of a certain State clearly appears from the consideration of the grounds upon which the Supreme Court of the United States bases its jurisdiction, and the method of reasoning by which it has arrived at its legal conclusions. The Constitution in defining the extent of the jurisdiction of the Courts of the United States makes no allusion whatever to corporations. Section 2 of Article III, which is the sole source of Federal jurisdiction, is as follows: "The judicial power shall extend to all cases in law and equity arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to controversies between two or more States;—between a State and citizens of another State;—*between citizens of different States;*—between citizens of the same State claiming lands under grants of different States, and between a State or the citizens thereof and foreign States. citizens or subjects." The first time that the question of Federal jurisdiction in cases of foreign corporations came before the Supreme Court seems to have been in the cases of *Insurance Co. v. Boardman,* 5 Cranch, 57, and *Bank v. Deveaux, Ibid.,* 61. These cases

were heard and decided together at February Term, 1809, the decision in the former being based upon that in the latter. The Court held that "the right of a corporation to litigate in the Courts of the United States depended upon the character (as to citizenship) of the members which compose the body corporate, and that a body corporate as such can not be a citizen within the meaning of the Constitution." Boardman's case, *supra.* It proceeds upon the theory that in such cases it is not the corporation which is the real party, but that "the controversy is substantially between aliens, suing by a corporate name, and a citizen, or between citizens of one State, suing by a corporate name, and those of another State, Deveaux case, page 91. The result of this ruling was that where it did not appear on the record that *all* the stockholders were citizens of a different State from the adverse parties, or the contrary, was shown in spite of the averment, the jurisdiction did not attach. This remained the settled ruling of the Supreme Court until overruled by the case of *Railroad v. Letson,* 2 Howard, 497, decided at January Term, 1844. The opinion in this case is remarkable not only from its radical departure from long-standing precedents, but also from its great influence upon future decisions, as well as certain allusions to Chief Justice Marshall, which we are compelled to say are rather at variance with our estimate of his character. That case sustained the jurisdiction upon two grounds. It first holds, perhaps rather inferentially, that all the stockholders of a corporation will be conclusively presumed to be citizens of the State under whose laws the corporation was created. This is the doctrine that has since been uniformly followed, and is now too firmly settled to admit of controversy.

The Court also said, on page 557: "But there is a broader ground upon which we desire to be understood, upon which we altogether rest our present judgment, although it might be

maintained upon the narrower ground already suggested. It is, that a corporation created by and doing business in a particular State is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same State for the purposes of its incorporation, capable of being treated as a citizen of that State, as much as a natural person. Like a citizen, it makes contracts, and though in regard to what it may do in some particulars it differs from a natural person, and in this especially, the manner in which it can sue and be sued, it is substantially, within the meaning of the law, a citizen of the State which created it, and where its business is done, for all the purposes of suing and being sued." This doctrine appears to us to be the more tenable of the two, but seems to have been subsequently abandoned. Both, however, lead to the same result. The result of that and subsequent decisions is to substitute in place of the citizenship of the stockholders, which can not now be inquired into, the averment of the particular State under whose laws the corporation is created and existing, as the essential jurisdictional fact, which must affirmatively appear either in the petition or the pleadings. Being jurisdictional and not modal in its nature, the want of its proper averment leaves the cause completely within the jurisdiction of the State Courts.

But it is contended that the amendment to the petition, subsequently allowed by the Circuit Court of the United States, cured this defect. We do not think so. The Superior Court could pass only on what was before it; and if the record and petition, as presented to it, did not make out a proper case for removal, it was its duty to retain the cause and proceed therein according to law. If the Superior Court had allowed the petition to be amended, or a new petition had been filed within the time prescribed by law, a different question would be presented; but neither of these things was done. After the Superior Court had acted upon the petition

in due course of procedure, the question of removal was 'then settled, one way or the other; and no subsequent amendment could affect it. Certainly an amendment made in the Circuit Court after the cause had been carried to a final judgment in the Superior Court, could not invalidate all that had been lawfully done. That a substantial amendment to a jurisdictional averment can not be made in the Circuit Court appears to be well settled by the Federal decisions. In other words, an amendment can not be allowed in the Circuit Court so as to show jurisdiction where it does not already affirmatively appear. If it were permitted, it would result in the intolerable confusion, so clearly pointed out by Sawyer, J., in *MacNaughton v. Railroad*, 19 Fed. Rep., 883, of having two distinct cases between the same parties and involving the same subject-matter, carried on simultaneously in two independent Courts, and resulting in distinct and separate judgments. The method of procedure, with its underlying principles, is so clearly stated by Waite, C. J., in *Railway Co. v. Dunn*, 122 U. S., 513, 516, that we quote from it at some length. The Court says: "The theory on which it rests is that the record closes, so far as the question of removal is concerned, when the petition for removal is filed, and the necessary security furnished. It presents, then, to the State a pure question of law, and that is whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit. That question the State Court has a right to decide for itself, and if it errs in keeping the case, and the highest Court of the State affirms its decision, this Court has jurisdiction to correct the error, considering, for that purpose, only the part of the record which ends with the petition for removal. But even though the State Court should refuse to stop proceedings, the peti-

tioning party may enter a copy of the record of that Court, as it stood on the filing of his petition, in the Circuit Court, and have the suit docketed there. If the Circuit Court errs in taking jurisdiction, the other side may bring the decision here for review, after final judgment or decree, if the value of the matter in dispute is sufficient in amount. In that case, as in the writ of error to the State Court, the question will be decided on the face of the part of the record of the State Court which ends with the petition for removal, for the Circuit Court can no more take a case until its jurisdiction is shown by the record, than the State Court can be required to let it go until the record shows that its jurisdiction has been lost. The questions in the two Courts will be identical, and will depend on the same record, namely, that in the State Court ending with the petition for removal. The record remaining in the State Court will be the original, that in the Circuit Court an exact copy."

In *Cameron v. Hodges,* 127 U. S., 322, 326, MILLER, J., speaking for the Court, says: "In this instance there has been a removal from a tribunal of a State into a Circuit Court of the United States, and there is no precedent known to us which authorizes an amendment to be made, even in the Circuit Court, by which the grounds of jurisdiction may be made to appear which were not presented to the State Court on the motion for removal."

In *Crehore v. Ry. Co.,* 131 U. S., 240, it was held, quoting the syllabus, that "a fatal defect in the allegation of diverse citizenship in the petition for the removal of a cause from a State Court for that reason, can not be corrected in the Circuit Court of the United States."

In *Jackson v. Allen,* 132 U. S., 27, 34, FULLER, C. J., speaking for the Court, says: "It appears from the record that the citizenship of the parties at the commencement of the actions, as well as at the time the petitions for removal were

filed, was not sufficiently shown, and that therefore the jurisdiction of the State Court was never divested. This being so, the defect can not be cured by amendment."

In *Gerling v. Railroad,* 151 U. S., 673, 690, the Court says: "The incidental suggestion in that opinion (*Ayers v. Watson,* 113 U. S., 594) that the petition for removal might be amended in the Circuit Court as to the form of stating the jurisdictional facts, assumes that these facts are already substantially stated therein, and accords with later decisions by which such amendments may be allowed when, *and only when,* the petition, as presented to the State Court, shows upon its face sufficient ground for removal."

In *Powers v. Ry. Co.,* 169 U. S., 92, the Court, while holding that the petition may be amended in certain particulars where sufficient grounds for removal are shown upon the face of the petition and record as presented *to the State Court,* besides that it can not be amended in the Circuit Court where jurisdictional facts are not so shown. It says, on page 101: "A petition for removal, when presented to the State Court, becomes part of the record of that Court, and must doubtless show, taken in connection with the other matters on that record, the jurisdictional facts upon which the right of removal depends; because, if those facts are not made to appear upon the record of that Court, it is not bound or authorized to surrender its jurisdiction, and, if it does, the Circuit Court of the United States can not allow an amendment of the petition, but must remand the case." The decisions of the Circuit Courts of the United States are, of course, to the same effect. The rule is clearly stated in the recent case of *Fife v. Whittell,* 102 Fed. Rep., 537, 540.

We wish to be clearly understood. We hold, upon what we believe to be the authority of the Supreme Court of the United States, that the petition, *when passed upon by the State Court,* must contain in an affirmative form *all* the jurisdic-

tional averments necessary for removal; that the State Court has the right, subject to review, to pass upon the sufficiency of the petition as a question of law; that the simple averment that a corporation was created under the laws of another State, does not negative the fact that it may have been re-incorporated under the laws of this State; and that there must be an affirmative averment or admission, somewhere in the record, that a corporation seeking to remove a cause is not a domestic corporation of the State of North Carolina.

We think these requirements are lawful, and are certainly not unreasonable, in view of the fact that the records and decisions of this Court show that the defendant now seeking to remove its cause has become a domestic corporation by complying with the provisions of the act of February 10, 1899, known as the "Domestication Act."

We are not seeking jurisdiction, but simply prescribing for ourselves the rule of conduct laid down by Chief Justice MARSHALL in *Bank v. Deveaux,* 5 Cranch, 61, where he says, on page 87: "The duties of this Court, to exercise jurisdiction where it is conferred and not to usurp it where it is not conferred, are of equal obligation. The Constitution, therefore, and the law are to be expounded, without a leaning the one way or the other, according to those general principles which usually govern in the construction of fundamental or other laws."

The merits of the case have nearly been lost sight of in the dominating question of removal. In fact, the recent cases of *Coley v. Railroad,* 129 N. C., 407; *Thomas v. Railroad,* 129 N. C., 392, and *Cogdell v. Railroad,* 129 N. C., 398, all decided since the case at bar was tried in the Court below, practically answer the defendant's exceptions. We see no error in the admission or rejection of evidence. It was competent for the plaintiff to show that he had complained of the road engines, and had been promised a safer engine on which

to work. On the other hand, to show that the engineer had a book of rules does not of itself tend to prove that the plaintiff had any knowledge of its contents.

All the defendant's prayers for instructions that were not given, were properly refused or modified, as they practically amounted to a direction of the verdict.

In the absence of error, the judgment of the Court below is Affirmed.