### LEWIS v. CLYDE STEAMSHIP CO.

(Filed December 20, 1902.)

1. REMOVAL OF CAUSES—*Petition—Affidavit—Citizenship—Corporations—Pleadings.*

    A petition for the removal of an action from a state to a federal court on account of a diversity of citizenship, which fails to specifically state that the defendant is a corporation existing under the laws of another state, naming the state, is defective.

2. REMOVAL OF CAUSES—*Petition—Filing—Time—Time to Plead—Pleadings.*

    A petition for the removal of a cause from a state to a federal court must be filed within the time fixed by the federal statute, though the time for filing pleadings in the state court is extended.

3. EVIDENCE—*Sufficiency—Salvage—Admiralty—Contracts—Title.*

    In this action to recover salvage for saving a vessel, the evidence is sufficient to be submitted to the jury as to whether the defendant contracted to pay salvage and had any substantial interest in the vessel.

4. CONTRACTS—*Ultra Vires—Corporations—Pleadings—Pleas at Law—Confession and Avoidance.*

    In an action to recover salvage for saving a vessel, a defense that the contract is *ultra vires* is in the nature of a plea of confession and avoidance.

    Furches, C. J., and Montgomery, J., dissenting.

Action by A. I. Lewis against the Clyde Steamship Company, heard by Judge *F. D. Winston* and a jury, at March Term, 1902, of the Superior Court of Carteret County. From a judgment for the plaintiff, the defendant appealed.

*A. D. Ward,* and *D. L. Ward,* for the plaintiff.
*Rountree & Carr,* for the defendant.

DOUGLAS, J.   This was an action to recover salvage or compensation for saving a vessel called the "City of Jacksonville," which was stranded on Whalebone Inmet Beach.   The summons in this case was issued returnable to the March Term, 1901, of the Superior Court of Carteret County, and as no complaint was filed at that term, an entry was made as follows: "Time to file pleadings."   On the 31st day of July, 1901, the plaintiff filed his verified complaint, demanding judgment for $2,444.74, and on the 17th day of August, 1901, the defendant filed its petition and bond for the removal of said cause to the U. S. Circuit Court, and served notice on the plaintiff that at the next term of the Superior Court of Carteret County, a motion would be made to have said cause removed.   At the September Term, 1901, of said Court, the defendant made its motion to have said cause removed, which motion was refused.   The defendant filed its exception.

The motion was properly refused on two grounds, either of which would have been sufficient.   The petition states that the defendant petitioner "was, at the time of the commencement of this suit, and still is, a citizen of the State of Delaware, and of no other State, and a non-resident of the State of North Carolina."   It is well settled that a petition for removal must, in addition to the allegation that the defendant is a non-resident of the State of North Carolina, specifically state that the defendant is a corporation existing under the laws of another State, giving the name of the State by which it was created. *Springs v. Ry.,* 130 N. C., 186; *Thompson v. Ry., Ibid.,* 140; *Ins. Co. v. French,* 18 How., 404; *Mullen v. Dows,* 94 U. S., 444; *Pennsylvania v. Quicksilver Co.,* 10 Wall., 553. Moreover, the petition was not filed within the time limited by the Federal statutes of removal.   *Howard v. Ry.,* 122 N. C., 944.   It is contended that the defendant was not required to file its petition for removal until after the filing of the

complaint, inasmuch as the right of removal would be governed by the sum demanded. This does not alter the effect of the statute. If the complaint had not been filed within the first three days of the term to which it was returnable, the defendant could have moved to dismiss. If it failed to do so, and, on the contrary, consented to an extension of time for the filing of pleadings beyond the return term, it lost its right of removal. The answer alleges that the defendant was misled by the statements of the plaintiff's counsel as to the sum that would be demanded in the complaint, but we can not find any proof of this allegation. In our view of the case, it resolves itself almost entirely into an issue of fact. The plaintiff alleges that he was employed by defendant company, acting through its duly constituted officers, that he faithfully performed the services required of him, and earned the compensation demanded. He testified, among other things, that he went to the general office of the defendant in New York City, where he made the contract declared on, with men whom he knew to be officers of the company. He further testified that the vessel in question wore the Clyde colors; that there was a large C on the flag fastened to the flag staff; that the life preservers, buckets, bed clothes, table ware, boats and oars were all marked C. S. C. He also said he had some correspondence with the Clyde Steamship Company, the defendant in this action. This was at least some evidence tending to prove that the plaintiff made a contract with the defendant, as alleged, and that the defendant had some substantial interest in the vessel. The defendant denies these allegations in its answer, but fails to offer any proof, except two papers from the records in the U. S. Custom House in New York, tending to show that the vessel belonged to the De Bary Bays' Merchants' Line of New York, of which Marshall Clyde was president. The credibility and weight of this evidence were for the determination of the jury, who found that the plaintiff did contract with the de-

fendant to render the services set out in the complaint, and that the defendant was indebted to the plaintiff, on account of such services, in the sum of $2,000. They also found that the defendant did not own the vessel at that time, and that the contract was not in writing. Under the view taken of the case in the Court below, in which we concur, these latter issues do not seem to be material.

The defendant's counsel contend that the contract sued on was *ultra vires* of the defendant. Even if the evidence had tended to sustain this contention, we think that such a defence is in the nature of confession and avoidance. There are various exceptions to the evidence, as well as to the charge of the Court, none of which can be sustained. In the absence of essential error, the judgment is

Affirmed.

Furches, C. J., dissenting. The defendant offered evidence that it was not the owner of the vessel called the "City of Jacksonville," but that it belonged to the De Bays Merchants' Line, of New York, and the jury found that the defendant was not the owner of the "City of Jacksonville." It also appears that the defendant never had any benefit from the plaintiff's services on said vessel. This being so, the plaintiff could only recover upon his contract, if he could recover at all. He could not recover on the doctrine of *quantum meruit,* as he got no benefit. It is admitted that the defendant is a corporation, and, as such, could only contract by deed through its agent, and they could only make a contract, which would bind the defendant, when made within the line and scope of the business of the corporation. The officers could not make a contract with the plaintiff to repair a vessel which the defendant company did not own and had no interest in, that would be binding upon the defendant company. Such a contract, if made (and this is denied), was

*ultra vires,* and had no binding force or effect on the defendant. This is shown from the facts and testimony in the case, and it is found by the jury that the defendant was not the owner of the "City of Jacksonville," the vessel wrecked, and received no benefit from the plaintiff's labor. And the Court calls this a plea in confession and avoidance, and a matter of fact for the jury. This is new to me, that *ultra vires* is a question of fact to be found by the jury. The evidence and findings that the defendant was not the owner of the vessel, and never received any benefit from the services of the plaintiff, I think, showed the *ultra vires* of the contract (if ever made), and presented a question of law for the Court and not for the jury. The plaintiff makes out his case—must recover upon his right of action; and if he made out a case for the defendant, that was sufficient; the defendant need not show anything.

MONTGOMERY, J., concurs in the dissenting opinion.