BILES v. RAILROAD.

(Filed November 13, 1906).

*Railroads—Rules of Employment—Abrogation—Defective Appliances—Negligence—Contributory Negligence—Assumption of Risk—Fellow-servant Act—Nonsuit.*

1. In an action against a railroad for damages for personal injuries, an instruction that "if the jury found that the rule which was offered by the defendant was habitually violated to the knowledge of the defendant or of those who stood towards the plaintiff in the position of vice-principals, or if they found that the rule was so frequently and openly violated for such a length of time that the defendant could, by the exercise of ordinary care, have ascertained that it was being violated, the rule is considered in law as being abrogated, and would have no effect upon the acts of the plaintiff," was correct.

2. On a motion for nonsuit, or its counterpart, the direction of a verdict, the evidence of the plaintiff must be accepted as true, and construed in the light most favorable to him.

3. In an action against a railroad company for damages for personal injuries, where the plaintiff's evidence shows that he was at the time of the injury at the usual position on the step provided for the purpose on the pilot of the engine by order of his superiors and in the necessary performance of his duties, and that he was thrown on the track and injured because the engine did not have the usual hand-hold along the pilot beam, and that he did not know it was lacking when he got on, and was guilty of no carelessness in his personal conduct, his right of action is established.

4. In an action for negligence against a railroad company operating in this State, the defense of working on in the presence of a defective appliance or machine, usually dealt with under the head of assumption of risk, has been eliminated by the Fellow-servant Act; but if, apart from the element of assumption of risk, the plaintiff in his own conduct has been careless in a manner which amounts to contributory negligence, his action fails, except in extraordinary and imminent cases like those of *Greenlee* and *Troxler*.

ACTION by David Biles against Seaboard Air Line Railway Company, heard by *Judge Fred Moore* and a jury, at the February Term, 1906, of the Superior Court of ANSON.

The three ordinary issues in actions of this character were submitted.

There was verdict and judgment for plaintiff, and defendant excepted and appealed.

*J. A. Lockhart* and *H. H. McLendon* for the plaintiff.

*J. D. Shaw, Adams, Jerome & Armfield* and *Murray Allen* for the defendant.

HOKE, J.    This case was before the Court on a former appeal, and will be found reported in 139 N. C., 528.

The facts supporting the claim of plaintiff are substantially similar to those disclosed in the former appeal.

There was much testimony on the part of defendant contradicting the evidence offered by plaintiff; but the jury have accepted the plaintiff's version of the occurrence, and we find no error which gives the defendant any just ground of complaint.

There was some additional testimony offered on the present trial as to the existence or non-existence of a rule on the part of the defendant forbidding the plaintiff to take a position on the pilot of the engine.    This was submitted to the jury and found against defendant under the following charge (after correctly charging as to the effect of such a rule, if the same existed) :

"If the jury find from the evidence that the rule which was offered by the defendant was habitually violated, to the knowledge of the defendant, or of those who stood towards the plaintiff in the position of vice-principals, or if the jury find from the evidence that the rule was so frequently and openly violated for such a length of time that the defendant could, by the exercise of ordinary care, have ascertained that it was being violated, the Court charges you that if you find these to be the facts, the rule is considered in law as being abrogated, and would have no effect upon the acts of the plaintiff."

This charge is in compliance with our former decision, and we still think it declares the correct doctrine on the question.

The only objection seriously urged upon the argument here was that the Judge should have instructed the jury that on the entire evidence, if believed, they should answer the issue as to contributory negligence in favor of the defendant.

This would be, in effect, to sustain defendant's motion to nonsuit; and as said by *Douglas, Judge,* in *Coley's case,* 129 N. C., at page 413: "It is well settled that on a motion for nonsuit, or its counterpart, the direction of a verdict, the evidence for the plaintiff must be accepted as true, and construed in the light most favorable to him."

Applying this rule to the facts before us, we are of opinion that the position contended for by defendant cannot be sustained.

The plaintiff, among other things, testified as before, that he was an employee working on a freight train of defendant, and was known as the "front train hand"; that on the night of 29 November, 1902, as this train was going into the yard at Hamlet, N. C., he was injured by having his foot run over and crushed by the engine of the train on which he was working; that it was a part of plaintiff's duties at such times to keep a lookout in front of the engine, that he might change the switches, when required, for the proper moving of the train and to protect his train from loose cars which might be on the track; and in order to be ready to perform his duties efficiently the proper placing was on the pilot of the engine; that all the engines plaintiff had ever worked on to this time had a step on the pilot for the use of the train hand, and also a hand-hold running around the beam of the pilot by which he could hold on with reasonable safety; and plaintiff was instructed, both by the engineers and conductors of freight trains, who had charge of the same, to take this position on the pilot when engaged in this duty. That all other

hands did so when engaged in the work, and that an employee could not properly perform this duty, as it was required of him, in any other position.

Stating the evidence on this point by question and answer in the redirect examination, the evidence appears as follows:

Q. When you entered a yard to change those switches, or perform those duties you had to perform, would the engineer stop for you to do it?

A. No, sir; he would not stop for me to get off or on. They would not have a man they would have to stop for. They would curse him and turn him off.

Witness further testified that on the night in question, as the train entered the yard at Hamlet, plaintiff had gone forward and changed the switch and came back to take his usual position on the pilot, the engine running along the track about as fast as a man could walk; that plaintiff got on the engine, putting his foot on the step provided for the purpose; and after having taken this position, the engine made some jolt or eccentric movement caused by a depression of the track, or otherwise, and plaintiff was thrown on the track in front, and his foot run over and crushed, as stated; that plaintiff was thrown because this engine did not have the usual hand-hold along the pilot beam; that it was on all the engines that plaintiff had ever worked on before, and plaintiff did not know it was lacking here when he got on, or he would not have done so.

If this statement is accepted as true, the plaintiff, on general principles applicable to cases of this character, would have a clear right of action, and there would seem to be no case of contributory negligence presented. Certainly the Judge could not hold, as a matter of law, that plaintiff was guilty of contributory negligence.

Apart from this, it will be noted that there is no carelessness imputed to plaintiff here in his personal conduct, except that of working on in the presence of a defective appliance or

143—6

machine, which, as stated in a former opinion, has been usually dealt with under the head of assumption of risk; and this defense, under our statute on the subject, as construed by the courts, has been eliminated in cases of this character.

The statute, Private Laws 1897, ch. 56, sec. 1, provides that whenever an employee of a railroad company operating in the State is injured or killed by reason of the negligence of another employee, or by reason of any defect in machinery, way, or appliance, he shall have a right of action.

Section 2 provides that any contract or agreement, expressed or implied, made by employee to waive the benefit of the general section shall be null and void.

In *Coley's case,* 128 N. C., 534, the Court held that assumption of risk, being in its nature a contractual defense, was not open to defendant in a case of this kind, and a verdict and judgment for plaintiff was sustained.

A reference to the facts of *Coley's case,* stated in the opinion of the *Chief Justice* on page 534, will show that the cause was one in all its essential features exactly similar to the one before us; the only difference being that in *Coley's case* the employee had taken the usual and customary position on the rear of a shifting-engine which was moving backwards, and was thrown on the track and injured by reason of a defective engine in not having a grab-iron by which employees engaged in that duty were accustomed to hold on and save themselves, while in the case before us the defect was in front of the engine, which was moving forward. In that case, too, a recovery was sustained, though the defect was known and observed; while here, the plaintiff testified that he did not know of the defect; and the testimony does not disclose that he had any opportunity to notice the absence of the hand-hold till the emergency was upon him. In both cases, however, the employees had taken, or were endeavoring to take, the position they were required to take in the proper performance of their duties.

As said in the present case, on the former appeal, this construction of the statute "does not at all import that in cases of the kind we are now considering the plaintiff is absolved from all care on his own part. Except in extraordinary and imminent cases, like those of *Greenlee* and *Troxler*, he is still required to act with that due care and circumspection which the presence of such conditions require. And, if apart from the element of assumption of risk, the plaintiff, in his own conduct, has been careless in a manner which amounts to contributory negligence, his action must fail."

We are referred by defendant to a large number of cases which seem to hold that it is negligence *per se* to take a position on the pilot of an engine, and more especially on that portion of it popularly known as the cow-catcher. But an examination of the facts of these cases will, in every instance, disclose that the injured person seeking redress had voluntarily taken such a position; and was either not an employee of the train at all, or was not required to take such a position in the necessary and proper performance of his duty.

Thus, in *Warden v. Railroad,* 94 Ala., p. 277, the plaintiff was a brakeman who had voluntarily taken his position on the pilot when no duty required him to do so.

Said *McClellan, Judge:* "It does not appear that he had any duties to perform, or that any of his duties could be performed on the pilot crossbeam or cow-catcher, or that it was in any sense necessary for him to be on the crossbeam in front of the engine at any time."

In *Railroad v. Jones,* 95 U. S., p. 439, plaintiff was not an employee as a train hand, but had voluntarily taken a position on the pilot of an engine when he had been warned against riding on the pilot and forbidden to do so. The distinction is well brought out in a case from the Georgia Reports, quoted in one of the briefs (*Railroad v. Myers,* 112 Ga., 237), as follows:

"That such employee and others of his class had been in the habit of riding on the locomotive, and that he, at the time of the catastrophe, was so doing with the knowledge of the conductor and engineer, and that this was in pursuance of a custom known to the officials of the company, did not render the above rule inapplicable, unless it further appeared that the deceased was on the locomotive in obedience to some order which he was bound to obey, or in the discharge of some duty which it was incumbent on him to perform."

As we have heretofore seen, the plaintiff's evidence was to the effect that he was, at the time of the injury, on the pilot of the engine by order of his superiors and in the necessary performance of his duties; and having been injured by reason of a defective machine, and being guilty of no carelessness on his own part, personal conduct, his right of action is established.

There is no error in the record to the prejudice of defendant, and the judgment below is affirmed.

No Error.

WALKER, J. I concur in the conclusion of the Court, and also in the opinion, except as to the application of the doctrines of assumption of risk and contributory negligence and the true construction of the Act of 1897. When an employee enters into the service of his employer, he assumes all of the ordinary risks of the master's business when carefully conducted, and he does not assume any risks arising out of the employer's negligence. When the employer is once convicted of negligence which proximately caused injury to his employee, he is liable for the consequential damages, and cannot relieve himself of this liability unless he is able to satisfy the jury by the greater weight of the evidence, the burden being upon him, that the employee by his own negligence contributed to the injury. When we get into the domain of negligence, we have necessarily passed beyond the region of as-

sumption of risk. The first is tortious and has nothing to do with the contract of employment; the second is wholly contractual in its nature. When the employee enters into the service, he contracts to take upon himself all the risks which are incident to the employment and which his employer cannot avoid by the exercise of care. The risks which the employer can prevent by the use of care are not within the terms of the contract, and the liability of the master depends upon principles wholly unconnected with the law of the contract. The very fact that the employer's negligence is, when generally considered, a breach of the duty impliedly enjoined by the contract, and therefore in a sense is a tort arising out of the contract, for which the employer is liable, but proves that the employee by the contract does not assume any such risk as that brought about by the employer's negligence. As a clear illustration of the difference between the two principles, let us consider the case of a fellow-servant. Before the Act of 1897, if a servant was injured by the negligence of a fellow-servant, the master was not liable, as that was regarded as one of the ordinary risks of the service which the servant assumed, upon the ground that the master, with the exercise of ever so much care, could not foresee that one of his servants would be negligent and thereby injure his fellow-servant. The servant was therefore held to have assumed this risk as one incident to the service and which he had impliedly by his own contract agreed to assume. But if the master was shown to have been negligent in selecting the offending servant and associating him with the others in his employ, he was held liable for an injury to a fellow-servant proximately resulting from the negligence of the delinquent servant, precisely because this risk, newly created, was not within the implied contract of assumption, as the master's own negligence had concurred with that of the servant in producing it. We might present examples indefinitely, which would thus point the dis-

tinction between the two doctrines and which would demonstrate beyond question that the line separating them is plainly and distinctly marked. Upon no scientific principle, therefore, can it be said that when a peril is caused by the negligence of the master, the servant assumes it. On the contrary, he is entitled to recover his damages unless the master can convict him of contributory negligence. The Act of 1897 (Revisal, sec. 2646) abolished assumption of risk so far as it related to the negligence of a fellow-servant, but no farther. It then left the liability of the employer for furnishing or maintaining defective machinery, ways or appliances, to his employees to be determined by the general principles of the law of negligence, and certainly did not intend to make the employer liable absolutely and at all events, and in all cases, without regard to any question of negligence. This I understand to be the construction which the act has received from this Court. In a certain class of cases, where the master, being a railroad company, neglects a primary duty to the servant and puts in his hand defective and unsafe appliances, by which the servant is injured, the master is held liable because of his neglect of a plain duty, which cannot be delegated (*Railroad v. Herbert,* 116 U. S., 642), and he will not be heard to plead his servant's contributory negligence, unless he can show that the servant knew that the situation was so obviously dangerous as to charge him with reckless indifference to his own safety, the chances of danger and probable injury being apparently greater than those of safety. *Elmore v. Railway Co.,* 132 N. C., 865. But these are exceptional cases, and as to all not within the exception the general law of negligence applies. The difference between assumption of risk and contributory negligence is well stated and illustrated in *Railroad Co. v. Fort,* 17 Wallace, 553; *Hough v. Railroad,* 100 U. S., 213; *Railroad Co. v. Herbert, supra; Railroad Co. v. McDaniels,* 107 U. S., 454, and it was dis-

cussed and applied by this Court in *Avery v. Railroad Co.,* 137 N. C., 130.

There have been expressions in·some of the decisions of this Court to the effect that assumption of risk is but a species of contributory negligence, but I think this confounds two things as distinct in their nature as they can possibly be, and is apt sooner or later to introduce confusion and uncertainty into the law.

This case can well be decided upon principles in the law of negligence, and seems to be governed by the case of *Springs v. Railway Co.,* 130 N. C., 186. In that case the plaintiff had stood on the pilot of the engine while in the performance of his duties and while the train was in motion, although it appeared that he was acting under orders in doing so. He frequently stepped on and off the pilot while the train was moving, without objection from the company or any of its servants in authority over him, and once while stepping from the pilot his foot was caught between the slats and he was thrown to the ground and injured. . The Court held the company liable under the circumstances, citing *Thomas v. Railroad Co.,* 129 N. C., 392; *Cogdell v. Railroad Co., ibid.,* 398, and *Coley v. Railroad Co., ibid.,* 407, as covering all the points made in the case upon the question of negligence and contributory negligence.

BROWN, J., concurs in the concurring opinion.