HENRY COX v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 30 September, 1914.)

Removal of Causes—Corporations—Charter—Questions of Law—
    Statutes — Public Documents — Place of Citizenship—Judicial
    Notice—State Courts—Jurisdiction.

Where a cause, upon proper petition and bond, is sought to be removed by the defendant from the State to the Federal courts for diversity of citizenship, upon the ground that the movant is a nonresident corporation, the question of citizenship depends upon the construction of its charter, and in determining it the State courts may take judicial notice of pertinent State legislation upon the subject, and reports made by the defendant to the Corporation Commission, which are public documents; and when therefrom it appears that the defendant is a domestic corpora-

Cox *v.* R. R.

tion, the State court will retain jurisdiction of the cause; and in this cause, upon examining the various acts of the Legislature incorporating the Atlantic Coast Line Railroad Company, and permitting the consolidation of the Wilmington 'and Weldon Railroad, and in respect to taxing its branch lines, etc., reserving jurisdiction in the State courts, it is held that this railroad is a domestic corporation as a matter of law, and is not entitled to the removal of the cause on the ground stated.

BROWN and WALKER, JJ., dissenting.

APPEAL by defendant from *Connor, J.*, at November Term, 1914, of EDGECOMBE.

This is an action to recover damages in the amount of $25,000 for personal injury, which the plaintiff alleges resulted from the negligent conduct of the defendant on 30 June, 1913, at a point between Smithfield and Four Oaks in Johnston County, on what was formerly one of the branch lines of the Wilmington and Weldon Railroad Company, and which is now a part of the Atlantic Coast Line.

The defendant in apt time filed its petition asking for the removal of the action to the Federal court upon the ground of diverse citizenship, it being alleged in the petition that the defendant company was at the commencement of this suit and at all times since has been and is a citizen and a resident of the State of Virginia, and that it is incorporated under the laws of the State of Virginia.

The motion to remove was denied, and the defendant excepted and appealed.

*H. A. Gilliam, James M. Norfleet, J. W. Keel, and J. H. Pou for plaintiff.*

*F. S. Spruill for defendant.*

ALLEN, J. The learned and well considered opinion of *Associate Justice Connor* in *Staton v. R. R.,* 144 N. C., 135, which was concurred in by all the members of the Court as now constituted, except the writer of this opinion, who was not then a member of the Court, is decisive of this appeal.

The defendant in both cases is the same and the injury in each occurred on a branch of the Wilmington and Weldon Railroad after its consolidation with the Atlantic Coast Line Railroad.

The record in the two cases is in all material respects identical, except in the *Staton case* the plaintiff alleged that the defendant was a corporation of Virginia, which was a circumstance favorable to the defendant upon its contention that it had the right to remove to the Federal courts.

It was held in the *Staton case* that the allegation that the defendant was a foreign corporation and incorporated under the laws of Virginia was not a statement of a fact, but an inference or conclusion, and that having alleged corporate existence, the court had the right to look at the several acts of the General Assembly bearing upon its incorporation for the purpose of determining whether or not the conclusion was correct.

It was further held that as the defendant had made reports from time to time to the Corporation Commission, and had referred to its charter and acts of incorporation, that these became public documents which the Court had the right to inspect, and that from an examination and consideration of the acts of the General Assembly of this State the defendant was a domestic corporation, at least in so far as was necessary to give the courts of this State jurisdiction over causes of action arising in this State.

The conclusion is, in our opinion, in accordance with law. It is not in conflict with cases like *R. R. v. Dunn,* 122 U. S., 573, which was decided twenty-one years before the *Staton case,* because the determination of the citizenship of defendant here is a question of law dependent upon the construction of the acts of incorporation, and not an issue of fact, which cannot be investigated except by the Federal court. Nor does it involve the question decided in *Harrison v. St. Louis Railroad Co.,* vol. 24 of the Supreme Court Reporter, 333, which held that a statute in Oklahoma intended to prevent a foreign corporation doing business in the State from removing an action to the Federal court was void. This last case belongs to the same class as

*Southern Railway Co. v. Allison,* 190 U. S., 326, which was considered and distinguished in the *Staton case.* It is also in harmony with the agreement between the State and the Wilmington and Weldon Railroad existing at the time it became a part of the Atlantic Coast Line.

The Wilmington and Weldon Railroad was chartered in this State in 1834, and by the terms of this charter all of its property was exempt from taxation, and the authority was conferred to fix its own freight and passenger rates.

This charter was held to be a contract between the State and the railroad, which could not be impaired, by the Supreme Court of the United States in *R. R. v. Reid,* 13 Wall., 264.

The Wilmington and Weldon Railroad operated under this charter for about sixty years, and during this period it constructed, out of its earnings, branch lines exceeding its main line in length, and, in addition to paying regular dividends to its stockholders, issued to them interest-bearing certificates of indebtedness and stock dividends until, at or near the time of its consolidation with the Atlantic Coast Line, the holder of an original share of stock in the Wilmington and Weldon road of the par value of $100 held certificates of indebtedness and stock, thus issued to him, amounting at par to about $1,300, and of a market value between $2,000 and $3,000.

In 1891 the State began to investigate the right of the corporation to claim exemption from taxation upon its branch lines, and this resulted in the decision in *R. R. v. Allsbrook,* 110 N. C., 137, holding that the branch lines were not exempt from taxation, and this was affirmed by the Supreme Court of the United States.

These were the conditions existing when the General Assembly of 1893 met. At that time the charter of the Petersburg Railroad expired, and the Wilmington and Weldon Railroad was anxious to have it rechartered, as it formed its connecting link with the north, and it was also desirous of avoiding the claim of the State for the collection of all back taxes on its branch lines, extending as to some of the lines over periods of from twenty to thirty years.

Cox *v.* R. R.

A settlement was finally reached, which is embodied in chapter 100, Private Laws 1893, the railroad agreeing to surrender its exemption from taxation and to submit to the rules and regulations of the Corporation Commission as to freight and passenger rates, and the State agreeing to waive its right to collect back taxes except for three years on the branch lines and two years on the main line of the railroad company and also to recharter the Petersburg Railroad.

At the same session of the General Assembly the controversies between the State and the railroad having been adjusted, an act was passed (ch. 284, Private Laws 1893) authorizing the railroad to consolidate with other railroad companies, but it was declared in the act that such consolidation should not deprive the courts of this State of jurisdiction over causes of action arising in this State. ·

No steps were taken under these acts looking to a consolidation with any other railroad before the session of the General Assembly of 1899, and at that session another act was passed (ch. 105, Private Laws 1899') amending the act of 1893 and continuing the authority to consolidate.

This last act is entitled "An act to amend and reënact chapter 284 of the Laws of 1893 concerning the Wilmington and Weldon Railroad Company, and to authorize that company to change its name to the Atlantic Coast Line Railroad Company of North Carolina"; and it is expressly provided therein that "This act shall not have the effect of ousting the jurisdiction of the courts of this State over causes of action arising within this State," and "that any and all corporations consolidated, leased, or organized under the provisions of this act shall be domestic corporations of North Carolina and shall be subject to the jurisdiction thereof."

It was under the authority of these several acts of the General Assembly that the Wilmington and Weldon Railroad became a part of the Atlantic Coast Line. It had its existence originally by reason of the legislative act of this State, and was therefore a creation of the State. It continued a domestic corporation of this State for more than sixty years and prospered under our

Cox *v.* R. R.

laws. It finally came to the State and said that it desired to enter into other business arrangements, and the State consented, but upon condition that the Wilmington and Weldon Railroad Company or the company taking over its property or with which it should be consolidated should continue to be liable in the courts of the State for wrongs done in the State, which condition was accepted and acted on by the company.

In our opinion, the General Assembly of the State had the power to permit a consolidation and at the same time to refuse to surrender the jurisdiction of the State courts already existent, which is in effect what was done.

If this power does not exist, and the defendant may at will violate the agreement with the State and the condition upon which consolidation was permitted, the propriety and wisdom of repealing the consolidating acts of 1893 and 1899 under the authority conferred by Article VIII, sec. 1, of the Constitution, is a matter addressed to the General Assembly.

The judgment of the Superior Court is
Affirmed.

BROWN, J., dissenting: I admit, as stated in the opinion of the Court, that the question of removal involved in this case has been decided adversely to the defendant in the case of *Staton v. R. R.*, 144 N. C., 136, decided in 1907, and that I concurred in that decision. Our judgment rendered then, in my opinion, is in conflict with the decisions of the Supreme Court of the United States, which are authoritative and binding upon all State courts upon the matter involved in this case.

The petition for removal in this case is admitted to be in due form and the requisite bond filed. It appears upon the face of that petition that the plaintiff is a citizen of the State of North Carolina, residing at Rocky Mount, and that the defendant "was at the commencement of this suit and at all times since has been and still is a citizen and resident of the State of Virginia; that it is incorporated under the laws of the State of Virginia, having its principal office in the city of Petersburg, Va."

Thus it will be seen that the only traversable fact set out in the petition is the citizenship of the defendant. This question of citizenship is the very foundation of the jurisdiction of the Federal court, and it is well settled by the decisions of the Supreme Court of the United States that the citizenship, being jurisdictional, is a question to be decided by the Federal court.

It is held in a multitude of cases that issues of fact, arising upon a petition for removal of a cause from a State to a Federal court, are to be determined by the Federal court, and not by the State court, and that the State court, for the purpose of determining for itself whether it will surrender jurisdiction, must accept as true the allegations of fact in such petition. A corporation is a citizen within the meaning of the Constitution of the United States, its citizenship is essentially a jurisdictional fact, and must be determined by the Federal court as much so as if the defendant was an individual. *C. and O. Ry. Co. v. Cockrell,* U. S. Sup. Ct. Rep., No. 6, p. 229, 15 February, 1914. In that case is cited practically all the decisions of the Federal court on the subject.

This must necessarily be so in view of the fact that the judicial power of the United States is wholly independent of State action, and the State may not by any exertion of authority, whether legislative or judicial, directly or indirectly, abridge, limit, or destroy such power.

As said by *Chief Justice White* in *Harrison v. St. Louis R. R. Co.,* vol. 24, Sup. Ct. Rep., p. 333, 15 March, 1914: "The doctrine is so elementary as to require no citation of authority to sustain it. Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests, and the lines which define it are so broad and so obvious, that unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few occasions for their statement and application."

In that case it is held that "averments challenging the foreign citizenship of a corporation are properly stricken from the an-

Cox *v.* R. R.

swer in a suit brought by such corporation in a Federal court to enjoin State officials from enforcing a forfeiture of its right to do business in the State because of its assertion of the right to remove an action against it from a State court to a Federal court, since such matters are properly cognizable only where presented in an appropriate manner and at the proper time to the Federal tribunal, which has a right to pass upon them when considering the propriety of the removal which is prayed."

It will be seen from reading the opinion of the *Chief Justice* in this case that the question of citizenship of a corporation is to be passed upon by the State court only as it is alleged and appears upon the petition for removal. When that citizenship is denied, the question can only be determined by the Federal court, for the very cogent reason that the question is vital to the jurisdiction of the latter.

The statute provides for the filing of a petition and bond in the State court and notice to the plaintiff, all of which is complied with. If the petition and bond are sufficient, the State court is divested of jurisdiction over the case. *Winslow v. Collins,* 110 N. C., 119; 14 S. E., 512; *S. v. Dunlap,* 65 N. C., 491; *Smith v. Quarries Co.,* 164 N. C., 338; *Higson v. Insurance Co.,* 153 N. C., 35.

The plaintiff can then raise the question of jurisdiction in the Federal court only by a motion to remand. In the recent case of *Smith v. Quarries Co.,* 164 N. C., at page 352, *Mr. Justice Hoke* says: "True, it is now uniformly held that when a verified petition for removal is filed, accompanied by a proper bond, and same contains facts sufficient to require a removal under the law, the jurisdiction of the State court is at an end; and in such case it is not for the State court to pass upon or decide the issue of fact so raised, but it may only consider and determine the sufficiency of the petition and the bond." *Herrick v. R. R.,* 158 N. C., 307; *Chesapeake v. McCabe,* 213 U. S., 207; *Wecker v. Enameling Co.,* 204 U. S., 176.

I agree to the conclusions reached by *Judge Connor* in the *Staton case,* that the Atlantic Coast Line Railway, according to the legislation cited by him, ought to be a North Carolina cor-

Cox *v*. R. R.

poration; but I am very decidedly of the opinion that where the allegation of the petition for removal is that it is a Virginia corporation, the State court has no jurisdiction to go behind the petition. That fact is one upon which rests the very foundation of the Federal jurisdiction; and to sustain that jurisdiction, it must necessarily be decided by the Federal and not by the State court.

The jurisdiction of the State courts to pass on a question of citizenship and to go behind the allegations contained in the petition does not seem to have been considered very fully in the *Staton case.*

For the reasons given, I am of opinion that the cause should be removed to the Federal court, and that the citizenship of the defendant can only be passed upon by that court upon a petition to remand.

WALKER, J., concurring in the dissent: However right this Court may have been when, in *Staton v. R. R.,* 144 N. C., 136, it declared the true status of the defendant with reference to its citizenship as being in this State or another, my opinion is now fixed that it is not competent for this Court, in the exercise of its proper jurisdiction, to decide that question where diverse citizenship is positively alleged in the petition, although it may be denied by the other party. It makes no difference what the truth of the matter may be, if upon its face the record shows a removable case, our jurisdiction ceases, and the issue of fact, and the law arising thereon, is at once, and automatically, transferred to the jurisdiction of the Federal court for decision. It requires no order or action of the State court to make such transfer effective. We cannot enter upon an investigation of any evidence, however it may be brought to our attention, whether by oral, documentary, or record proof. It is the bare allegation of fact contained in the record that determines the jurisdiction of this Court, and no denial, however direct, positive, or even circumstantial it may be, can prevent the jurisdiction of the Federal court from attaching immediately on filing the petition and the requisite bond.

Cox *v.* R. R.

The language of the Supreme Court of the United States, by whose decision upon this and like Federal questions we must abide, has settled the practice in such cases and finally closed the discussion of this point in *Railway Co. v. Dunn,* 122 U. S., 573, referring to the recent decisions of *Stone v. South Carolina,* 117 U. S., 432, and *Carson v. Hyatt,* 118 U. S., 279.

The Court, in the *Dunn case,* admits that there had been some confusion in the cases before that time, "the utterances of the Court not being clear and distinct," but says that the meaning of the removal legislation is very plain and unmistakable. Referring to *Stone v. South Carolina, supra,* and stating that the question was finally settled therein "on full consideration and with the view of announcing the opinion of the Court on that subject," the Court thus aptly and explicitly states the law: "Only two weeks after that case was decided, *Carson v. Hyatt* came up for determination, in which the precise question was directly presented, as the allegation of citizenship in the petition for removal was contradicted by a statement in the answer, and it became necessary to determine what the fact really was. We there affirmed what had been said in *Stone v. South Carolina,* and decided that it was error in the State court to proceed further with the suit after the petition for removal was filed, because the circuit court alone had jurisdiction to try the question of fact which was involved. This rule was again recognized at this term in *Carson v. Dunham,* 121 U. S., 421 (*ante,* 992), and is in entire harmony with all that had been previously decided, though not with all that had been said in the opinions in some of the cases. To our minds, it is the true rule and calculated to produce less inconvenience than any other. The theory on which it rests is that that record closes, so far as the question of removal is concerned, when the petition for removal is filed and the necessary security furnished. It presents, then, to the State court a pure question of law, and that is, whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit. That question

the State court has the right to decide for itself; and if it errs in keeping the case, and the highest court of the State affirms its decision, this Court has jurisdiction to correct the error, considering for that purpose only the part of the record which ends with the petition for removal. *Stone v. South Carolina,* 117 U. S., 432 (*supra*), and cases there cited."

This case and the remarks of the Court just quoted were fully reviewed and approved by us in *Herrick v. R. R.,* 158 N. C., 307, in which we said: "The rule, as thus formulated, has been recognized by this Court as the authoritative and controlling one in *Springs v. R. R.,* 130 N. C., 186. The cases to the same effect are collected in 5 Digest U. S. Supreme Court Reports (L. Ed., 1908), pp. 5100 and 5101. In the case of *R. R. v. Daughtry, supra,* the very question now before us was involved, and the Court held it to be 'thoroughly settled' by the decisions that issues of fact raised upon petitions for removal must be tried in the Federal court. The issue in that case was one of diverse citizenship. The matter was fully discussed at the last term by *Justice Hoke* in *Rea v. Mirror Co., ante,* 24, and we then reached the same conclusion as herein stated," citing *Crehore v. Railway Co.,* 131 U. S., 240; *R. R. v. Daughtry,* 138 U. S., 298.

In *Rea v. Mirror Co., supra, Justice Hoke* thus decisively closes the question: "If the plaintiff desires to challenge the truth of these averments, he must do so on motion to remand or other proper procedure in the Federal court. That court being charged with the duty of exercising jurisdiction in such case, must have the power to consider and determine the facts upon which the jurisdiction rests," citing many cases to support his statement.

The mere fact that we may have resorted to the records of the Corporation Commission to establish certain facts does not take the case out of the settled rule, for they are, at least, but evidence of the facts they contain, and we have no jurisdiction to consider evidence, but only the allegations of the petition. It was attempted, in the case of *Carson v. Hyatt, supra,* to introduce the record of a former suit between the parties to estop Mrs. Carson upon the question of her citizenship. With refer-

ence to this offer of *record* proof, the Court said: "At most, it was only evidence, and had nothing to do with the 'face of the record.' "

So we see that the form of the proposed proof in denial of defendant's citizenship, whether record or otherwise, has nothing to do with the matter, as it does not appear in, or "on the face of," the petition. This very question was distinctly raised in *Carson v. Hyatt, supra,* and this is the Court's emphatic response: "The·State court is only at liberty to inquire whether, on the face of the record, a case has been made which requires it to proceed no further. In the present case the petition stated, in positive terms, that Mrs. Carson was, at the beginning of the suit, and still continued to be, a citizen of Massachusetts. With that fact established, the necessary citizenship for a removal existed. Whether it was a fact or not could, under the ruling in *Stone v. South Carolina,* only be tried in the circuit court." Nothing, therefore, extraneous to the record may be considered, but *only* those things that appear *therein.* The questions of fact and of law involved must afterwards be settled in the Federal court, upon the motion to remand.

If we take notice of evidence not in the record in order to decide the truth of the matter, we are not acting solely upon facts disclosed by the record, as we are imperatively required to do, but seeking information from foreign sources in order to pass upon the issue of fact, which we are clearly forbidden to do, and the quality of the evidence so used by us, whether legally conclusive or otherwise, does not differ the case from those we have cited, in which the Court has cleared up the obscurity in former decisions and stated the law with unequivocal directness, so as to leave no room for any possible doubt as to what is meant. It is our bounden duty, under the law, to let go our jurisdiction, unless there is sufficient warrant on the very face, and not outside, of the record for a retention of the case.

In this particular matter the Federal court may not agree with us as to the proper construction and the legal effect of the evidence considered by this Court in *Staton v. R. R.,* however much we may be convinced of the correctness and unassailable

character of our position, or it may deny our right to enter upon the investigation which led us to the conclusion that the defendant in that case was a corporation of this State, having its domicile and citizenship here. I concurred in that view, and have not changed my opinion there held in regard to it; but I can clearly see, in the light of decisions of the Federal Court of last resort, which are binding upon us, that it is beyond our jurisdiction to decide the question. My conclusion is that defendant is entitled to the removal of the cause and that his application should be granted, although it may not be essential to a technical transfer of the case, which may take place without our intervention.

I may properly add to what has been said in this opinion, that when *Staton v. R. R.* was before this Court, it is apparent that the specific question involved in this appeal was not considered with reference to the authoritative utterances of the highest Federal Court, but we simply assumed, all of us, that the jurisdiction rested in this Court to decide the fact of citizenship, as the evidence of it came from such an indisputable source; and with this assumption, without any specific inquiry into the correctness of it, we did not, at the time, question our right to construe the evidence, not introduced in the case, but which we found in the reports of the Corporation Commission, but silently passed that point in the discussion of the case and immediately considered the nature and legal effect of the proof. None of this was in the petition or in the record, nor did any suggestion of the kind appear "on the face of the record." The case of *Staton v. R. R.* is, therefore, not binding as a precedent, and even if it is an authority, and we were inadvertent to the positive and unquestionable ruling of the higher court, we should follow the latter as controlling upon us. I am sure if the attention of the learned justice who wrote the opinion in that case had been drawn to that ruling, he would have concurred in our present view of the question. We altogether failed to notice it.