BROWN and WALKER, J.J., dissenting.
This is an action to recover damages in the amount of $25,000 for personal injury, which the plaintiff alleges resulted from the negligent conduct of the defendant on 30 June, 1913, at a point between Smithfield and Four Oaks in Johnston County, on what was formerly one of the branch lines of the Wilmington and Weldon Railroad Company, and which is now a part of the Atlantic Coast Line.
The defendant in apt time filed its petition asking for the removal of the action to the Federal court upon the ground of diverse citizenship, it being alleged in the petition that the defendant company was at the commencement of this suit and at all times since has been and is a citizen and a resident of the State of Virginia, and that it is incorporated under the laws of the State of Virginia.
The motion to remove was denied, and the defendant excepted and appealed.
The learned and well considered opinion of Associate Justice Connor inStaton v. R. R., 144 N.C. 135, which was concurred in by all the members of the Court as now constituted, except the writer of this opinion, who was not then a member of the Court, is decisive of this appeal.
The defendant in both cases is the same and the injury in each (654) occurred on a branch of the Wilmington and Weldon Railroad after its consolidation with the Atlantic Coast Line Railroad.
The record in the two cases is in all material respects identical, except in the Staton case the plaintiff alleged that the defendant was a corporation of Virginia, which was a circumstance favorable to the defendant upon its contention that it had the right to remove to the Federal courts.
It was held in the Staton case that the allegation that the defendant was a foreign corporation and incorporated under the laws of Virginia was not a statement of a fact, but an inference or conclusion, and that having alleged corporate existence, the court had the right to look at the several acts of the General Assembly bearing upon its incorporation for the purpose of determining whether or not the conclusion was correct.
It was further held that as the defendant had made reports from time to time to the Corporation Commission, and had referred to its charter and acts of incorporation, that these became public documents which the Court had the right to inspect, and that from an examination and consideration of the acts of the General Assembly of this State the defendant was a domestic corporation, at least in so far as was necessary to give the courts of this State jurisdiction over causes of action arising in this State.
The conclusion is, in our opinion, in accordance with law. It is not in conflict with cases like R. R. v. Dunn, 122 U.S. 573, which was decided twenty-one years before the Staton case, because the determination of the citizenship of defendant here is a question of law dependent upon the construction of the acts of incorporation, and not an issue of fact, which cannot be investigated except by the Federal court. Nor does it involve the question decided in Harrison v. St. Louis RailroadCo., vol. 24 of the Supreme Court Reporter, 333, which held that a statute in Oklahoma intended to prevent a foreign corporation doing business in the State from removing an action to the Federal court was void. This last case belongs to the same class as Southern RailwayCo. v. Allison, 190 U.S. 326, which was considered and (655) distinguished in the Staton case. It is also in harmony with the agreement between the State and the Wilmington and Weldon Railroad existing at the time it became a part of the Atlantic Coast Line. *Page 566 
The Wilmington and Weldon Railroad was chartered in this State in 1834, and by the terms of this charter all of its property was exempt from taxation, and the authority was conferred to fix its own freight and passenger rates.
This charter was held to be a contract between the State and the railroad, which could not be impaired, by the Supreme Court of the United States in R. R. v. Reid, 13 Wall., 264.
The Wilmington and Weldon Railroad operated under this charter for about sixty years, and during this period it constructed, out of its earnings, branch lines exceeding its main line in length, and, in addition to paying regular dividends to its stockholders, issued to them interest-bearing certificates of indebtedness and stock dividends until, at or near the time of its consolidation with the Atlantic Coast Line, the holder of an original share of stock in the Wilmington and Weldon road of the par value of $100 held certificates of indebtedness and stock, thus issued to him, amounting at par to about $1,300, and of a market value between $2,000 and $3,000.
In 1891 the State began to investigate the right of the corporation to claim exemption from taxation upon its branch lines, and this resulted in the decision in R. R. v. Allsbrook, 110 N.C. 137, holding that the branch lines were not exempt from taxation, and this was affirmed by the Supreme Court of the United States.
These were the conditions existing when the General Assembly of 1893 met. At that time the charter of the Petersburg Railroad expired, and the Wilmington and Weldon Railroad was anxious to have it rechartered, as it formed its connecting link with the north, and it was also desirous of avoiding the claim of the State for the collection of all back taxes on its branch lines, extending as to some of the lines over periods of from twenty to thirty years.
(656) A settlement was finally reached, which is embodied in chapter 100, Private Laws 1893, the railroad agreeing to surrender its exemption from taxation and to submit to the rules and regulations of the Corporation Commission as to freight and passenger rates, and the State agreeing to waive its right to collect back taxes except for three years on the branch lines and two years on the main line of the railroad company and also to recharter the Petersburg Railroad.
At the same session of the General Assembly the controversies between the State and the railroad having been adjusted, an act was passed (ch. 284, Private Laws 1893) authorizing the railroad to consolidate with other railroad companies, but it was declared in the act that such consolidation should not deprive the courts of this State of jurisdiction over causes of action arising in this State. *Page 567 
No steps were taken under these acts looking to a consolidation with any other railroad before the session of the General Assembly of 1899, and at that session another act was passed (ch. 105, Private Laws 1899) amending the act of 1893 and continuing the authority to consolidate.
This last act is entitled "An act to amend and reenact chapter 284 of the Laws of 1893 concerning the Wilmington and Weldon Railroad Company, and to authorize that company to change its name to the Atlantic Coast Line Railroad Company of North Carolina"; and it is expressly provided therein that "This act shall not have the effect of ousting the jurisdiction of the courts of this State over causes of action arising within this State," and "that any and all corporations consolidated, leased, or organized under the provisions of this act shall be domestic corporations of North Carolina and shall be subject to the jurisdiction thereof."
It was under the authority of these several acts of the General Assembly that the Wilmington and Weldon Railroad became a part of the Atlantic Coast Line. It had its existence originally by reason of the legislative act of this State, and was therefore a creation of the State. It continued a domestic corporation of this State for more than sixty years and prospered under our laws. It finally came to the (657) State and said that it desired to enter into other business arrangements, and the State consented, but upon condition that the Wilmington and Weldon Railroad Company or the company taking over its property or with which it should be consolidated should continue to be liable in the courts of the State for wrongs done in the State, which condition was accepted and acted on by the company.
In our opinion, the General Assembly of the State had the power to permit a consolidation and at the same time to refuse to surrender the jurisdiction of the State courts already existent, which is in effect what was done.
If this power does not exist, and the defendant may at will violate the agreement with the State and the condition upon which consolidation was permitted, the propriety and wisdom of repealing the consolidating acts of 1893 and 1899 under the authority conferred by Article VIII, sec. 1, of the Constitution, is a matter addressed to the General Assembly.
The judgment of the Superior Court is
Affirmed.